IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 02:07cr26-WKW |
| | ) | |
| FREDERICK A. SMITH | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS**

Comes now the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully submits the government's response to the defendant's motion to suppress (Doc. #12).

Frederick A. Smith's ("Smith") motion to suppress should be denied since law enforcement officers of the Luverne Police Department searched 166 Barbara Avenue, Luverne, Alabama 36049, only after a verbal taped recorded consent was given by the lessee, Felecia Ray. In addition, Smith told the officers officer where one firearm could be located within the residence. Finally, Smith, post-*Miranda*, admitted possession of the firearms found at 166 Barbara Avenue. Smith's arguments to suppress evidence found at 166 Barbara Avene are meritless.

**I.      Background.**

On November 5, 2006, the Luverne Police Department dispatcher received a hangup E-911 call. The dispatcher recorded that the call came from the residence of Felicia Ray ("Ray")[1], located at 166 Barbara Avenue ("the residence"). Officers Ed Billingsley and Travis Reynolds responded to the residence and learned that Ray's son and her "common-law husband," Frederick

---

[1]      Felecia Ray is also known as Felecia Brady.

A. Smith, had been involved in a verbal and physical altercation. The officers did not witness the altercation nor did they see physical signs of an altercation. Nevertheless, the officers gave Smith a warning before they left the residence.

The next day, November 6, 2006, Ray approached Officer Billingsley near the Smart Plant where she worked and told Officer Billingsley that Smith had her truck, and that she wanted to go to "her" residence to get her clothing.[2] Ray also told Officer Billingsley that she knew that Smith was in possession of two firearms and Smith had threatened to kill her if she ever left him. Ray asked Officer Billingsley to escort her to "her" residence to get her belongings. Investigator David Sankey did a surveillance of Rays residence looking for Smith's white truck, and when he did not see the truck, Inv. Sankey advised Officer Steve Harrellson and Assistant Chief Mickey Powell that they could escort Ray to her residence to get her cloths.[3]

As Officer Harrelson, Assist. Chief Powell, Nicholas and Ray attempted to go into Ray's front door, Inv. Sankey announced over the police radio that he saw Smith's white truck parked on the side of the house camouflaged by some tall bushes. After hearing Inv. Sankey announces that Smith's truck was near the residence, Ray ran back to the police car in which she arrived. Smith opened the front door. The officers told Smith that he would be placed in temporary protective custody while Ray got some of her belongings. As the officers attempted to place Smith in protective custody, Smith stated that "he did not do anything wrong," and snatched his

---

[2] Should this motion result in an evidentiary hearing, the United States will present evidence that 166 Barbara Avenue was rented by Felecia Brady from Jake Sanders.

[3] Billingsley contacted Harrelson, Powell and the Crenshaw County's Victim Coordinator, Janet Leigh Nicholas, to assist Ray in getting her cloths and truck from her residence.

arm away from the officers and attempted to go back into the residence. Smith struggled with the officers until he was sprayed with pepper spray, which also affected Assist. Chief Powell.

Around the same time the following exchange took place between Assist. Chief Powell and Ray:

| | |
|---|---|
| Powell: | What's your name? Felicia? |
| Ray: | Felicia Ray. |
| Powell: | Felicia, do we have your consent to search the house for weapons that might be here? |
| Ray: | Yes. |
| Powell: | Do we–Do we have your permission. |
| Ray: | Yeah. |
| Powell: | Okay. She just gave a consent to search. |

The officers began searching the residence for weapons, while Powell and others began trying to clear the pepper spray from Assist. Chief Powell's and Smith's eyes, Smith was read his *Miranda* rights by Officer Harrell. When asked whether he understood his rights, Smith responded affirmatively. Smith was asked if he wanted to talk to the officers. Smith replied, "[y]es." Smith admitted that (1) there were guns in the house, (2) one gun was under the bed, (3) one gun belongs to his dad, (4) one gun belongs to his ex-wife, (5) he had hunted with one of the guns, (6) he was a convicted felon, and (7) he knew he was not suppose to possess a firearm. Smith did clarify that he thought that he could not possess a handgun.

Smith was arrested for disorderly conduct and resisting arrest.[4] On February 22, 2007, a grand jury sitting for the Middle District of Alabama returned a one-count indictment charging that Frederick A. Smith, having been convicted of a felony punishable by imprisonment for a term exceeding one year under the laws of the State of Alabama, possessed a firearm in and

---

[4] Smith entered a guilty plea in the Municipal Court of Crenshaw County, Alabama on November 29, 2006, to Disorderly Conduct (MC 06-098), and Resisting Arrest (MC-06-097).

affecting commerce, in violation of Title 18, United States Code, Section 922(g)(1). (Doc. #1).

On March 29, 2007, the defendant filed a motion to suppress all evidence seized from the residence located at 166 Barbara Avenue, Luverne, Alabama. (Doc. #12). The government submits this response.

II.   Argument.

  A.   **The Search of 166 Barbara Avenue Was Pursuant to a Valid Consent; The Evidence Seized Is Admissible.**

The law is well settled that permission to conduct a consensual search of property owned or occupied by a prospective defendant may be obtained from another person who possesses 'common authority over or other sufficient relationship to the premises'. *United States v. Backus*, 349 F.3d 1298, 1299 (11th Cir. 2003). *See, United States v. Matlock*, 415 U.S. 164, 171 (1974). In *Brackus*, a battered and estranged wife maintained authority to grant consent to search. In *Matlock*, the Supreme Court held that common authority "rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants have the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock* at 171.

In this case, Felicia Ray, told the Luverne Police Officers that 166 Barbara Avenue was "her" residence and gave them permission to search the residence. There is no indication that the consent to search was limited to a particular area. In fact, post-*Miranda,* Smith also admitted there were guns in the residence and told the officers the location of one of the guns. Officers Billingsley and Assist. Chief Powell knew that both parties lived at 166 Barbara Avenue because

Luverne Police Officers had been to residence in reference to a domestic problem prior to November 6, 2006.

In *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991), the Eleventh held that the district court did not err when it denied Harris's motion to suppress since the Deputy did not exceed the scope of the consent when he entered the truck and searched luggage in the truck. In reaching its conclusion, the Eleventh Circuit affirmed the district court's findings that Harris verbally consented to the search and was present during the search. At no time during the search did Harris attempt to prohibit the Deputy from searching the trunk or from opening travel bags. The Eleventh Circuit also held that the Deputy "reasonably interpreted the scope of Harris's consent." Finally, the Eleventh Circuit said that Harris had ample opportunity to limit the scope of the search by requesting that the Deputy discontinue the search. *Harris*, at 1117-1118.

In comparing *Harris* to the instant case, Smith had ample opportunity to object to the consent to search, or at least to limit the scope of the search of private areas. Instead, Smith told the officers that one of the firearms was under the bed in the master bedroom. At no time during the altercation with the officers, and having been advised of his rights, did Smith ever say to anyone that the residence belongs to him, or that Ray had no authority to consent to the search of 166 Barbara Avenue. In the *Harris* case, Defendant Harris knew that the Deputy was looking for drugs. Similarly, Smith knew that the officers were looking for guns or weapons. *Id.* at 118

    **B.**    **A Protective Sweep for Officer's Interest Is Justified By An In-Home Arrest of Search.**

The only other presented by Smith is that the officers were not in fear, therefore, officer safety did not justify the search of the residence. To the contrary, in *United States v. Hromada*,

49 F.3d 685, 689-690 (11th Cir. 1995), (citing *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093 (1990)), the Eleventh Circuit,

> "examined the constantly competing values of personal privacy and efficient police investigation in the warrantless search of an arrestee's home, and held that under certain circumstances, a protective search does not violate the Fourth Amendment . . . Officers faced with risks during in-home arrests are permitted 'to take reasonable steps to ensure their safety after, and while making, the arrest.' (Citations omitted). A balance of the competing interests of the arrestee and the arresting officers, the Court found, suggested that the officer's interest in their safety is 'sufficient to outweigh the intrusion such procedures may entail.' Officers have a legitimate interest 'in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack.'"

*Hromada*, at 690.

In this case, prior to arriving at her residence, Ray told the officers that Smith had two firearms in the residence. Moreover, Ray was so fearful for her own life that she requested a police escort to return to her own residence to get her clothes. The officers certainly had good reason to be more cautious and to protect their safety while at the residence of Ray.

### C. Voluntariness of the Consent.

Smith has not challenged the voluntariness of the consent nor does Smith allege that Felecia Ray was coerced or threatened in any way. Therefore, the consent was a voluntary consent to search the premises.

**CONCLUSION**

For the reasons stated above, the defendant's motion to suppress should be denied.

Respectfully submitted on this 6th day of April 2007.

                                        LEURA G. CANARY
                                      UNITED STATES ATTORNEY

                                      /s/Tommie Brown Hardwick
                                      TOMMIE BROWN HARDWICK
                                      One Court Square, Suite 201
                                      Montgomery, AL 36104
                                      Phone:  (334) 223-7280
                                      Fax:  (334) 223-7135
                                      E-mail:  tommie.hardwick@usdoj.gov
                                      ASB4152 W86T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 02:07cr26-WKW |
| | ) | |
| FREDERICK A. SMITH | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kevin L. Butler, Esq.

    Respectfully submitted,

    /s/Tommie Brown Hardwick
    TOMMIE BROWN HARDWICK
    One Court Square, Suite 201
    Montgomery, AL 36104
    Phone: (334)223-7280
    Fax: (334)223-7135
    E-mail: tommie.hardwick@usdoj.gov
    ASB4152 W86T